The first thing that I'd obviously like to address is jurisdiction. I think there's a very plain and simple way through this, which is this. Offshore marine contractors' third-party complaint against wreck is a pure admiralty claim. It's a claim for contribution for maintenance and cure, which is just as admiralty as admiralty can be. And Rule 9H2 provides that if any part of a case, if any claim within a case is admiralty, then there's a 1292A3 appeal available for any portion of that case, not just for that claim. This is easier than all that because we're, in fact, appealing under 1292A3 the portion that is just absolutely explicitly pure admiralty, which is OMC's claim for contribution for maintenance and cure against— Your Honor, I—the case law provides that under notice pleading, you don't actually need to invoke 1333 admiralty jurisdiction. You don't need to invoke 9H. And what I would say is that under Loera v. Motor Vessel Alberta from this Court in 2011, what this Court held is if there are two bases of jurisdiction— and there are, in fact, two bases for jurisdiction with regard to OMC's cross-claim— excuse me, third-party complaint against wreck, the first being admiralty and the second being supplemental jurisdiction. If there are two bases for jurisdiction, then admiralty wins. How does that affect, if at all, Ms. Plonson's jury trial rights on the claims that she had pending? So under Loera, what this Court held is even a purely in rem claim, which is Federal Court original jurisdiction, there's a jury trial available. And so I would say that that same analysis applies here and that Ms. Plonson is entitled to a jury trial as to her claims, but the Court would decide, likely or not, OMC's third-party complaint against wreck for contribution claims. Can I ask if the Marine Service summons and complain on REC under 14A, third-party practice for civil cases, or 14C, third-party practice for admiralty cases? And do you know that? OMC did not make a 14C tender to Ms. Plonson because this claim is OMC's claim. 14C tenders are, in effect, to tender the third-party defendant as though Ms. Plonson had sued. But this claim is OMC's claim because it's OMC that's out the money. Right. It's summons on REC. That's right. Yes. How did it serve that? I don't have the answer for that, Your Honor. 14A or 14C? And that's the problem. There's no invocation of 14C that it's admiralty. Anyway, okay. Why don't you get to the merits, unless somebody else has a question about jurisdiction? I guess I was wondering, is there any law that would suggest that the district court could be asked after the fact about a 54B certification? The district court certainly — this is not a 54B case. The district court did not make a 54B. I know, but could it become one? I don't have the answer for that, Your Honor. I think this is reasonably clearly a 1292-83 case, and therefore I don't know whether the district court could make it. But if we disagree, if we say it's a mixed case, your client's a Jones Act employer, so there's a statutory aspect to jurisdiction, just as there would have been access to an admiralty court. Then she wants a jury. Hard for us to say it's unmistakable. That's certainly fair that it's hard to say that it's — hard for this court to say it's unmistakable. And I would agree that sitting here today, this is not a 54B case. Whether the district court could go back and remedy that in effect, I don't have the answer for you in front of me. I'd suspect the answer is no, but I just don't have that in front of me today. What happens if you lose on the jurisdictional issue? Well, that's a really interesting question. That touches on the merits. What happens is we go back and OMC tries its case against Ms. Planson. And I don't know the answer because the district court was not clear about whether OMC argues to be empty chair or not, whether REC should be part of the case and OMC makes that argument or not. Because the district court's ruling was that OMC's claim against REC fails as a matter of law. And therefore, it would seem as though OMC can still say OMC is responsible for the aggravation damages. OMC is not responsible for damages that it did not cause. But OMC obviously as pertains to maintenance and cure, OMC is still out the money. And so one of two things happens. The first is that OMC tries its case and the district court makes its ruling that without reference to REC, at which point we're back up here again and assuming that OMC is right on the merits, we have a new trial. The second is otherwise and let's say, for instance, OMC gets a zero verdict. In that case, it's all moot in effect, but OMC is still out the money that it paid maintenance and cure because there's no getting it back and OMC is back up here on those grounds. So the question would be, the answer to your question is first we go back and try the case. Second, either there's an appeal and there's OMC would ask for a reversal in a new trial because we tried the case without the ability to argue the fault of REC or we limited issue of maintenance and cure. Whether OMC can recover its damages from At which point you'd be able to make an affirmative defense that superseding cause. Absolutely. Absolutely. But none of us would have gotten to it. But it seemed to me Judge Ash was most animated about this, what he called the carte blanche problem. Can a Jones Act employer look back to childhood, find a third party tortfeasor and a totally separate accident and say, well, that's the underlying cause that got aggravated 30 years later in my freezer. A couple of responses. The first is this. The statute of limitations or latches under maritime law still applies. And so you can't reach back to eternity. Number two, OMC is certainly not arguing that proximate cause does not apply. The Jones Act has a featherlight causation verdict, but a purely general maritime law claim does not. And so it's no different than any other case where there are two accidents. And OMC is not coming here to say, you know, we can reach back till time immemorial to say that something else was actually the cause and bring that party. And that party still has. My oversimplifying. If you're just that you are just saying it's their burden and their disputed issues of fact as to whether or not. That's that's exactly right. You're not oversimplifying at all. It's it's their burden to show. And there are significant, significant disputed issues. In fact, I mean, this Bonson's testimony was that her neck hurt the entire time. And just with classic symptoms of radicular pain going into her arm, she told her neurologist the same thing that she was hurting over this entire period. And therefore, that's it's it's hard for me to get around where there are disputed issues of fact here. And recontends that, in effect, you know, there's a superseding cause here of this separate accident. But in reviewing the cases that rec sites and reviewing the cases that I found, I have not found a case where there's an issue of superseding damages in effect and where the. Damages that are at issue here where rec can be responsible for general damages for its accident. But OMC is really responsible for the medical damages for the maintenance and cure aspect that that line doesn't make a lot of sense. The district court also commented about the distinction between an aggravation and an injury. And with respect to the district court, that's just a line that I don't think really, maybe with the exception of health insurance, exists in the law and certainly not in the maritime law because an aggravation is nothing more than a new injury to the same thing that makes it worse. And, you know, the law is eminently well established that the second tort visa is responsible for the aggravation and the original tort visa is responsible for the original injuries. And that's why I think that the district court's effort to A, its concern about going back in time to somebody's birth is misplaced, and B, there's not a material concern that this is a really difficult thing to apply. It's no more different than any other case. I would go back to someone's birth. If they have some kind of disability or something, do you take that into consideration? I mean, they may not have been in Jones Act. But do you, so, I mean, there's nothing, it's not necessarily a not friendly question. No. Where have you found the person? You certainly would, but, you know, it's canon that you take the plaintiff as you find them. And so you don't get to argue that, you know, this person was actually disabled before and therefore, because it's just such canon that you take the plaintiff as you find them. So that's not. It's adding on expenses or whatever. Well, but maintenance and cure, what happened here is Ms. Plonson did not pay for her surgery. OMC paid for Ms. Plonson's surgery. Ms. Plonson is getting maintenance, I believe it's $45 a day, because OMC is paying her maintenance and $45 a day. And OMC is getting that lump sum. This is not, you know, some sort of distributed thing. This is really a specific claim. And this is an accident that happened, like a discernible identifiable event that she sued over in 2015. And that, you know, we have this evidence that she testified to that she was injured over the course of these three years. So what we're asking this court for is that OMC should not have to pay for a surgery if a fact finder determines that OMC did not cause the need for that surgery, that the tort accuser should do that. You opined on what would happen if you lost on the jurisdictional question. Can you opine on what would happen if you won? Certainly. I think that's reasonably straightforward. What happens is, be it the jury verdict form, well, really the jury verdict form because Ms. Plonson has, you know, between OMC and REC, who caused which damages. And then the judge. Is there a proportionate responsibility there? Well, I think Ms. Plonson had neck surgery. And the jury could decide that that was entirely precipitated by REC. The jury could decide that it was half precipitated by REC. It's a proportionate responsibility. Absolutely right. And there's already a mechanism for doing that in this case. Absolutely. That's, you know, that's what happens in these claims. The Bertram case is exactly that. The jury decides the proportionate responsibility. That's exactly right, Your Honor. It's reasonably straightforward. It's no more complicated than any other two-party claim. Yes, more in the briefs than the district court opinion, but isn't the REC's answer that the district court said, because she never sought any treatment at all other than the first thing, there really was no injury at all at the outset, and therefore there's no disputed issue of fact? Well, the district court did not come to that conclusion. As much as I've read the district court's two opinions, the district court did not say that. It said a categorical. It said that a second accident terminates a main incident here. But it did say she never sought any treatment at all. And it is absolutely true. And from 30,000 feet, you first hear these facts, and this seems like a really classic superseding cause incident. But then you actually listen to Ms. Plonson's testimony and you look at her medical records, and it turns out that she never sought medical treatments, and yet she testified that she had radicular pain going down into her arm, that she had neck pain that was in essence unchanged. And it's summary judgment, so it's not essential, but this was detrimental to her own case when she testified this because she had already settled with REC, and she was hurting her case against OMC when she said that. So it's not as though this is self-certifying testimony that there's no reason to believe. And you also, again, have the medical record where she tells her neurologist that her symptoms were in effect unchanged. So the jury can do with that whatever it wants. The jury can make whatever conclusions it deems appropriate, but it is a question for a finder of fact. The fact that she... You say that if they're halfway responsible, she's not going to collect half of her damages. That's right. That's exactly right. Because it's just settled out. And so really that money is unaccounted for because OMC paid for the surgery, and she has... She's not made whole. She's made whole. She's not made whole because she should have put that into what she settled for. But why would she? Because she doesn't ever have to pay for that. She doesn't get a double recovery. REC gets out a little bit lighter, and OMC has to in effect pay twice because OMC again pays if it's... not double pays, but OMC never gets that money back from REC. Even if OMC is found fault free, OMC still is, of course, obligated for maintenance and cure, and therefore OMC never gets to recover that. Unless there are any questions, I'll cede the rest of my time. Thank you. Thank you. Ms. Robbins? Good morning, Your Honors. I'm Kristen Robbins. I'm here on behalf of REC Marine Logistics. As an outset, I'd like to address some of the jurisdictional issues that the Court asked us to brief over the last couple of weeks. Mr. Morris mentioned that the claim for reimbursement against REC is a pure admiralty claim. I can get through talking this morning. That's not the case. 9H provides that when you have dual bases of jurisdiction, federal question jurisdiction, and a pure admiralty claim, you still have to designate. The second portion of 9H says that if you have a pure admiralty claim standing on its own, you do not need to designate. There's no indication that the claim for reimbursement of maintenance and cure is a pure admiralty claim. It's not a claim like an in-run suit against a vessel. It's not a claim that can only be brought in federal court. It's claims that are routinely tried to juries because they're attendant and kind of enveloped and wrapped into the plaintiff's. It's a Jones Act claim and claims for unseaworthiness in maintenance and cure. So this is a claim that could have been brought in state court. There's nothing that indicates if REC is never added back into the suit, is never partied back in, that would mean that OMC would have to file suit in federal court. Or if Ms. Pointson had filed suit in state court, there's nothing that requires OMC to institute a federal lawsuit to enforce or seek reimbursement for maintenance and cure. So on that account, there's been no designation in either Ms. Pointson's petition or in the third-party demand that invoked the federal court's admiralty jurisdiction under 9H. There's no indication that it was noted to be a claim arising in admiralty. And absent that, there needs to be a certification under Rule 54B by Judge Ash in order for this court to exercise jurisdiction. Wouldn't it seem, I mean, you hadn't spotted this. It's only in response to our question. But I guess I'm wondering why wouldn't both parties have wanted him to certify it? Unless you disagree with opposing counsel's description of what would happen if we don't take jurisdiction, it's building in a possible complication for your client as well. No, that's true. And I think I do disagree with what Mr. Moore said about what would happen going forward. I don't think that the trial as it would go forward, if it hasn't been certified, that it would even necessarily need to involve determinations of liability as to the 2015 accident where REC wouldn't be available to defend itself. And that's because the claim has been dismissed. So any determination for liability is— Their request for contribution has been dismissed. Correct. And because the lawsuits were severed out at the outset, REC's liability vis-à-vis the 2015 incident is not going to be determined by any trial going forward. I'm not sure I understand. If she prevails against them and this analysis of Judge Ash's was mistaken, how would they achieve—how would they be able to get contribution indemnification from your client? I think they would have to—I mean, the third-party claim has been dismissed. So I think they would have to—I don't know. This is procedurally such an interesting question and difficult for us—has been difficult for us to sort through. But you're not denying that at some point Judge Ash's opinion dismissing them would have to be reviewable, are you? No, I believe it would. It would what? It would have to be reviewable at some point. Okay. So explain how and when. Well, I think what the Fifth Circuit has recently said is that there should be a use of the Rule 54B request for certification. So I think in that case, if the court decides now today that it doesn't have jurisdiction, in order for this to be reviewable, OMC needs to request that Judge Ash certify the judgment under 54B as a final judgment. But it doesn't mean they don't have to. They can wait to the very end and bring their appeal, and then you have to go back and try this with them if we agree with you. If you're not going to get off free just because we have to wait because we don't yet have jurisdiction and they don't have to certify a—get a certified question issued, that's a convenience thing to do. And we don't even have to grant that if it's brought to us. So they still would have that wrapped up whenever they get their final judgment is when they would appeal this issue if we say it's not ripe right now. I suppose—no, I suppose I agree with the court on that issue then. So we would still go back for the trial if they're right. I suppose not. So you're not going to get out of it. It just seems that it's the timing which could be much worse. No, I suppose the court's right. And I know in, you know, deciding these issues at the outset, we had anticipated that the court would hear this under Rule—or under 1292A3 and, you know, hadn't really considered the procedural ramifications of if the court declines to exercise jurisdiction at that time because it was anticipated by me that there would be a request for certification under Rule 54B. Could you repeat the question? Sure. Essentially what has happened in this case is this is a case involving two separate accidents that were separated in time by almost three years, and there's been a request for reimbursement of maintenance and cure that was incurred and that was paid only after the second accident. What OMC has sought to do is an extraordinary remedy. They're seeking to reach back in time and find a prior tortfeasor to pay maintenance and cure benefits that were only incurred after a subsequent accident in which that prior tortfeasor had no involvement and in which them, as the Jones Act employer, are alleged to be solely at fault. The laws never afforded OMC the remedy that it is now seeking. The court in this case, in granting summary judgment in favor of REC, simply applied the facts of the case to the longstanding legal doctrine of the superseding intervening cause doctrine and the eggshell plaintiff rule. It created no separate bright-line rule that affects a Jones Act employer's right to seek reimbursement under circumstances in which they can prove that the third-party tortfeasor was the proximate and legal cause of the damages for which they're seeking. It's undisputed in this case that the maintenance and cure damages were not in existence prior to the 2018 accident, and one of the issues that has sort of been a sticking point in this case is that OMC has consistently conflated Ms. Poinson's injury that she claimed in 2015 with the disability that she claimed after 2018. She never sought maintenance and cure for the two and a half, three years in between the two accidents, and the testimony in this case, the evidence in this case, suggests that she would not have been entitled to maintenance and cure because she wasn't disabled. There was nothing preventing her from carrying out her duties on the vessel. She may have testified that she was experiencing neck pain, but that doesn't get OMC to a place where it can meet its burden at trial, which is that it has to show REC caused the need for maintenance and cure. It caused the disability. It caused the requirement that those benefits be paid. What about the proposed expert testimony? That was submitted in support of OMC's motion for reconsideration. It was unsworn. It doesn't need to be under our rules. It just has to be able to be placed in an admissible form later. Our summary judgment rules are different than they used to be, and you just have to be able to offer something that could be put into an admissible form. Do you have any other? Yeah. I would say it was a records-only review. The doctor, Dr. Robear, who- Supposed to wait, doesn't it? I suppose it does, but the other issue is his ultimate finding was that he said her cervical issues can be related to the 2015 incident. There's been no dispute that she testified that she had cervical pain following the 2015 incident, and just a simple conclusory statement that her cervical issues are related to 2015 doesn't relate the neck pain to an eventual development of a disability that requires maintenance and cure. It doesn't get OMC to where it needs to be, which is to show that REC caused the disability. It's been undisputed in this case that REC's negligent actions vis-a-vis an elision in 2015 had anything to do with a slip and fall in a freezer three years later. Those are two completely separate events. So necessarily just acknowledging that Ms. Poinsant had neck pain following 2015, that's not been reasonably disputed in this case. What has to be shown is that her neck pain would have eventually developed into the disability that required payment for maintenance and cure, and there's no medical evidence, there's no diagnostic studies from the relevant time period between the two accidents that suggest that that was ever the case. What about the medical records that say that the fall aggravated the cervical injuries from the 2015 collision? Those medical records were obtained only after the 2018 accident when she finally began treating with a neurologist. So if we're talking about aggravation, the aggravation is what caused this new category of damages. The aggravation is what caused the disability, and OMC's ability to collect on maintenance and cure specifically is tied to that aggravation because that's what was the catalyst for the disability and her inability to work going forward. There's no evidence that there was ever going to be any kind of disability or a physical issue precluding her from continuing in service of the vessel up to and until the 2018 incident occurred. So you're arguing that we should affirm because there's no fact issue at all as to your affirmative burden of showing that the 2018 was the superseding cause? Or are you saying legally a Jones Act employer can never recover from an initial tortfeasor? Let's say she slips and falls in the freezer, but it aggravates something that your client caused. It seemed to me the district court was saying the latter. It seems to me your brief is trying to say the former. I think there is some ambiguity in the court's order and reasons about specifically what the ramifications will be. There was a notation by Judge Ash that said whether you look at the resolution of these issues as one tied to the application of the superseding intervening cause doctrine, which is what we argued and what the court actually did find, or whether you look at it from the standpoint of a matter of public policy and requiring that there be evidence of causation in order to seek reimbursement of maintenance and cure, I think that other cases that may provide that evidence of causation are not what's before the court right now. Because in this case there isn't that evidence. There's been no corroboration that she was ever going to develop a disability. And that's what makes it interesting and difficult within the context of maintenance and cure because it's not the injury, it's the disability that is compensable. Okay, but I just ask if you were writing this opinion for yourself, you would say the superseding cause 2018 accident is undisputed? Yes. Your affirmative burden to prove that it is a superseding cause, there's no contrary evidence? That's correct. That's the ground. You are not saying that a Jones Act employer can't get contribution if, in fact, there were evidence that would suggest the initial injury led to aggravation because of the second? No, I'm not saying that. Okay, but then you do run into both her testimony and the medical records that would suggest there's a fact dispute that maybe she really had the bigger injury originally and it was aggravated now. I don't think that there is a legitimate fact dispute to that issue. And it's because the issue isn't that she was injured. The issue is that she later became disabled. And her own testimony pointed to that second accident as the cause of the disability. The law doesn't provide for, there's no legal duty from REC, vis-a-vis OMC, to provide it with a plaintiff that is invulnerable to injury. I think within the context of maintenance and cure and how that ordinarily works, you were kind of providing solutions where there is no problem. Ordinarily, if a Jones Act employer has an initial accident with a semen, there is maintenance and cure being paid, and that maintenance and cure is ongoing. Because maintenance and cure terminates upon a finding of the semen having reached maximum medical improvement and then being assessed with a permanent disability, after which they do not return to work, or after maintenance and cure can terminate upon somebody getting better and being declared fit for duty. There's no real threat to a Jones Act employer that they could have an ongoing maintenance and cure obligation. And a semen who has somehow returned to work, despite having been declared to have this disability, while maintenance and cure is ongoing. There's no real opportunity for the semen to be re-injured while in service of the vessel. There's no opportunity for a heightening of the maintenance and cure obligation, because if the maintenance and cure obligation is ongoing, necessarily the semen is still disabled and unable to return to work. So from some of the hypotheticals that have been posed, they don't have any real application as far as, in the real world, how the Jones Act plays out as a practical matter. If somebody is receiving maintenance and cure benefits, by virtue of that fact, they are not working on the vessel. They have not returned to work and have been declared fit for duty. If they have, the obligation terminates, and the line of causation is pretty easy to draw. Anything that happens after that is a new disabling injury, for which the Jones Act employer could not reach back in time to the original tortfeasor. But, you know, the treatises don't speak in terms of disability. They speak in terms of injury. But I think that's because there can be an injury that doesn't manifest itself yet in the disability until it's aggravated or reactivated. Well, I know there's case law, the Gooden case, and that there was that Gaucher v. Crosby Marine Services case that deals with that within the context of kind of a natural re-aggravation of a prior and underlying condition. What Judge Ash did to distinguish that in this case, and I think rightly so, is those cases involved sort of a natural re-emergence of an underlying condition kind of through, you know, the everyday work of the seaman, as opposed to the occurrence of a specific event that, you know, was accompanied by evidence that created new and additional intensification of prior symptoms and that it was that intensification that led to the disability. Right. But, you know, the treatise says when a seaman is injured aboard one vessel and subsequently the injury becomes aggravated or reactivated, so it could be always ongoing, an injury, or be reactivated. Either way, all vessels are liable for maintenance and cure equally. So that's not dependent upon the things that you're qualifying with. Well, that may be what the treatise says, but the fact of the matter is that it's not how maintenance and cure plays out in the real world because by virtue of receiving those benefits, it's necessary, or it's, you know, the way it works, that the seaman is not working in furtherance of the vessel. The benefits could have stopped. It's very much hypothesized in the way that the questions are discussed in the treatise that you're not getting benefits anymore, or it doesn't even say that you have to have been getting benefits. It just is related to an injury, which may or may not be debilitating at the time until it's aggravated or reactivated. Well, I think the problem that's presented in this case shows that there's some issue with foreseeability from the standpoint of REC, who, you know, it's been alleged that they caused this elision in 2015. Does that mean that they buy all vulnerabilities for this plaintiff to the end of time, irrespective of the happening of a second event for which her employer is alleged to be so reliable in which the evidence shows caused an intensification of prior symptoms that led to the first instance of maintenance and cure damages. Those damages did not occur in 2015, and they didn't manifest themselves for three years later. They only manifested themselves after a subsequent accident. We're talking about whether an employer is required to pay maintenance and cure going forward. There can be determinations that a seaman is fit for duty and returns to work and then has a natural re-aggravation. That's just the burden that Jones Act employers bear because seamen are traditionally considered to be wards of the admiralty and perform a dangerous job that requires these special workers' compensation benefits. So I thank the Court for its time. Thank you. Thank you. It is just not... The first time I saw Jones Act... Don't take his time. The first time I saw Jones Act... They're still taking your time. Can you take that off? I'll be brief anyway. Jury charge. I know... And it had the featherweight burden, and I thought it was a... When I was a state court judge, and I thought I was... that it must be... I couldn't believe that that was the jury charge. But that is the law. For whatever it's worth, the only time... I can't even think of a case where that's actually come out to make a difference. And I listened to the Supreme Court argument in CSX v. McBride where they discussed that. And the Supreme Court nor could either of the folks arguing the case come up with a single time when that's made a difference. I've only seen it argued, but it's never actually shaken out to matter. I'll be brief, Your Honors. It's just not the case that a declaration of MMI terminates a maintenance and cure obligation forever because if there's a re-injury or an aggravation, then the MMI, excuse me, the maintenance and cure obligation resumes. And the best case for that is Gooden v. Sinclair where that's exactly what happened, where the plaintiff was declared an MMI and then returned to work and worked and had an aggravation. I don't understand the district court's distinguishing of that case. Your Honor, I've struggled because Judge Ash is a phenomenal judge and a brilliant man. A fabulous judge. But I don't understand the distinction between an aggravation and a new injury because there have been countless cases that I've seen where somebody has had an onset of symptoms over time. Is that your best case, though? Is that what we should rely on? Gooden. I think, Your Honor, that's effectively that controls. I think you cited to Benedict. I think Gooden. I think those two cases are essentially the beginning and end of this. If you want to go back further, if you want grand precepts, then a tort visa is responsible for the consequences of its negligent action within proximate cause is as simple as you get. But, yes, I think Gooden and Benedict are the answer. They're the quick way through this. The other thing that I'd add is OMC is not really reaching back through the ether here because OMC did not first sue REC. Ms. Ponson sued REC on the 2015 accident. And had Ms. Ponson sued REC and gone to trial over REC, she would have had to argue either that OMC caused the surgical surgery or REC caused the surgical surgery or both of them caused the surgical surgery in some percentage, and the jury could have agreed with that or disagreed with that or done whatever they like, and that would have been the answer. It shouldn't come to a different result because OMC is, in effect, subrogated here because it paid for the cervical surgery. It comes out to the same place whether it's Ms. Ponson bringing that claim or whether it's OMC bringing that claim. The other thing that I'd add briefly is Ms. Ponson's ongoing pain as REC because Ms. Ponson's testimony was she was in significant pain, and she worked through it. And credit to her for doing that, but what would happen in an alternate future where we don't know that she had this 2018 slip and fall in the freezer is not in front of this Court, and it's ultimately a guessing game. But if we were here, if REC were still in trial, if REC had not settled out, then it could just as easily be Ms. Ponson's counsel standing here as me, and this Court would have to make the same decision, and it should come to the same result. But, you know, if we did have the trial, if that happened, and it was the version where we have jurisdiction so it took place all at once, then the plaintiff's counsel will definitely be there and will be definitely arguing that it's all on y'all. But if it's after the fact, it's not as clear. You know, that's interesting. The plaintiff's counsel, interestingly, has a really strong incentive to argue for REC's fault because that was a nellision, and, you know, fault is not usually an issue with a nellision, whereas fault's a big issue in the case against OMC. So they'd make... Because they're not going to be out of pocket because you've already paid, then they're not going to make the traditional arguments that it would be the person who I didn't settle with. Well, I mean, certainly in this case, right? Knowing now that REC has settled, they're going to have every incentive to argue that OMC did it and also OMC is at fault. So, you know, we'll see how that shakes out in front of the jury trial, but we'll never know how it happened had REC not settled. Not that there's anything wrong with settling, of course, but my only point that I'm driving at is that I don't understand why there would be a difference, the fact that OMC is standing up here, but it's just Mrs. Ponson, and that's what the district court decided, and I just don't see a basis for that discussion. If that discussion runs out, would you loop back to the threshold problem? It sounds like both of you contemplated there'd be immediate review. Well, I mean... Go ahead. REC in their brief agreed that there was 1292A3... And if it could have been done with the Rule 54B, can the party still correct it? Your Honor, I don't know the answer to that, regrettably. I'd like nothing more than to correct that because going forward with two trials seems really inadvisable. If the court would accept a 28J letter on that issue, then I'd be more than happy to provide one. I could do it by tomorrow. Each party can submit a 28J within three business days on the issue if they wish to. Thank you very much. Unless there are any further questions... That's perfect. I'll see you the rest of my time. Thank you. Thank you.